UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
JOHN DEPIETRO,

        Plaintiff,

        -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF BUILDINGS, NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY DEPARTMENT
OF TRANSPORTATION, NEW YORK CITY
DEPARTMENT OF SANITATION, NEW YORK CITY
DEPARTMENT OF EDUCATION, NEW YORK CITY
SCHOOL CONSTRUCTION AUTHORITY, NEW YORK
CITY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY DEPARTMENT OF
CITY PLANNING, NEW YORK CITY DEPARTMENT
OF DESIGN AND CONSTRUCTION, NEW YORK CITY
DEPARTMENT OF HEALTH AND MENTAL HYGIENE,
NEW YORK CITY DEPARTMENT OF PARKS AND
RECREATION, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD, VINCENT IGNIZIO, LOUIS TOBACCO,
VITO MUSTACIUOLO, IRA GLUCKMAN, WILLIAM
DELUCA, ROBERT RUVOLO, STEPHEN COYLE,
A. RUSSO WRECKING, INC. and JOHN DOE NUMBERS 1
THROUGH 25,

        Defendants.
-----------------------------------------------------------------------------X

No. 09-CV-932

**Memorandum and Order**

**TOWNES, United States District Judge:**

**INTRODUCTION**

        Plaintiff John DePietro ("DePietro") was the owner of a home on Staten Island that was

demolished by the City of New York (the "City"). He brings suit against the City, twelve

municipal agencies, City officials, and New York State Assemblyman Louis Tobacco, claiming

1

that the demolition violated his rights under the United States Constitution and state law.[1]  The

City Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Assemblyman Tobacco separately moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

For the reasons set forth below, the motions to dismiss are granted in part and denied in part.

## FACTS[2]

DePietro owned a home with two garages located at the corner of Page Avenue and

Academy Avenue in Staten Island (the "Property"). (Complaint ¶¶ 35, 39.) Ira Gluckman was

the Staten Island Borough Commissioner for the New York City Department of Buildings

("DOB"), and Vito Mustaciuolo is an Associate Commissioner of the New York City

Department of Housing Preservation and Development ("HPD"). (*Id.* ¶¶ 19-20.) William

DeLuca and Stephen Coyle are DOB inspectors, and Robert Ruvolo is a DOB employee. (*Id.* ¶¶

21-23.) Vincent Ignizio is a New York City Council Member for the 51st Council District, and

Assemblyman Tobacco represents the 62nd State Assembly District. (*Id.* ¶¶ 17-18.)

---

[1]The claims against the twelve municipal agencies named by DePietro as party defendants must be dismissed because they cannot be sued independently as separate entities. *See Lauro v. Charles*, 219 F.3d 202, 205 n. 2 (2d Cir. 2000); *Jones v. Dep't of Hous. Pres. and Dev.*, No. 06 Civ. 2085, 2007 WL 582751, at *2 n. 5 (S.D.N.Y. Feb. 22, 2007); *DelaPaz v. New York City Police Dep't*, No. 01 Civ. 5416, 2003 WL 21878780, at *2 (S.D.N.Y. Aug. 8, 2003).  The City and the City officials named as defendants will be collectively referred to as the "City Defendants."

[2] The following facts are not findings of fact by this Court.  They are taken from DePietro's complaint (the "Complaint") and from documents incorporated into the Complaint by reference. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  The City Defendants submitted a number of other extraneous materials.  These materials were excluded from consideration by the Court because the Court cannot consider such materials on a Fed. R. Civ. P. 12(b)(6) motion, and the Court elects not to treat this motion as one for summary judgment under Fed. R. Civ. P. 56. *See Roth*, 489 F.3d at 509.

DePietro acquired the Property in 1995 and intended to substantially renovate it to live there with his family. (*Id.* ¶¶ 35-36.)  The Property consisted of four connected structures: the main home, the Florida room, a two-car garage, and a single-car garage. (*Id.* ¶ 39.)

In or about the late 1990s, the New York City School Construction Authority began the construction of a public school across the street from the Property. (*Id.* ¶ 40.)  The construction caused a water runoff problem, which damaged the Property and the buildings on it. (*Id.* ¶¶ 42-44, 47.)  DePietro alleges that the water damage caused him to rethink his plans to make the Property his primary home. (*Id.* ¶ 45.)  DePietro's complaints to the school and municipal agencies about the water problem were unheeded. (*Id.* ¶¶ 46, 49.)

Based on an inspection of the Property, the DOB issued an Emergency Declaration Form, dated November 26, 2007, which was signed by Gluckman and another DOB official (the "11/26 Declaration").  The form states the following:

> One Story wood frame building is in completely deteriorated condition including holes/openings in roof.  Property at all sides is littered with debris, lumber and other combustible materials.
> Note: Property and building have been in this condition for over TEN YEARS. (first UB Notice issued in 1997)
> Also Note: Property and building is directly across from a Public School.
> REMEDY: Demolish building, remove all debris and fence off property.
> Inspector Stephen Coyle inspected this structure on 11/21/07 and requests that the condition above described be made safe either by [the form contains boxes for demolition, repair, sealing, sidewalk shed, fence, shoring, or other; the demolition box is checked] in order to ensure the public safety.

(11/26 Declaration, attached as Exh. A to the Declaration of Michelle Goldberg-Cahn, dated May 21, 2009 ("Goldberg-Cahn Dec."); *see also* Complaint ¶ 79.)

3

A memorandum, also dated November 26, 2007, was sent to Mustaciuolo from a Deputy Commissioner in the DOB. It reads:

> This confirms that Ira Gluckman, R.A. and Borough Commissioner of the Staten Island Borough Office, pursuant to Section 26-235 or 26-243 of the Administrative Code, declared an Immediate Emergency Condition.
> Inspector Stephen Coyle inspected this structure on 11/21/07 and requests that the condition described on the attached emergency declaration form be made safe either by demolition, repair, sealing or by whatever [means necessary] to protect the public safety.

(11/26 Memorandum, attached as Exh. B to Goldberg-Cahn Dec.; *see also* Complaint ¶ 79.)

On December 5, 2007, DePietro received a telephone message from Con Edison advising him that power was being cut off to the Property because the buildings were to be demolished. (Complaint ¶ 52.) DePietro talked with Gluckman and the DOB's chief inspector for Staten Island. They both told DePietro that the demolition was scheduled for the next day and that there was nothing DePietro could do to stop it. (*Id.* ¶¶ 53-54.) Gluckman also assured DePietro that "the Florida Room building and the garages on the Property would not be demolished because they had been fully renovated and were in perfect condition, and because they contained DePietro's valuable personal property." (*Id.* ¶ 55.) DePietro visited the Property and "ensured that the buildings were locked, sealed and safeguarded properly." (*Id.* ¶ 59.)

The DOB issued another Emergency Declaration Form, dated December 6, 2007 (the "12/6 Declaration"). Like the 11/26 Declaration, this form was also signed by Gluckman and a second DOB official. It states:

> One story garage is in severe disrepair. [Building] is vacant open unguarded. The [building] is subject to deterioration of the elements and presenting an attractive nuisance to trespassers, children and vandals. Garage is filled with combustible materials

and unsafe by reason of inadequate protection from fire.
REMEDY: DEMOLISH TO GRADE.
Inspector DeLuca inspected this structure on 12-06-07 and requests
that the condition above described be made safe either by [the form
contains boxes for demolition, repair, sealing, sidewalk shed,
fence, shoring, or other; the demolition box is checked] in order to
ensure the public safety.

(12/6 Declaration, attached as Exh. D to Goldberg-Cahn Dec.; *see also* Complaint ¶ 80.)

Another memorandum, dated December 7, 2007, was sent to Mustaciuolo from a Deputy

Commissioner in the DOB. It refers to the 12/6 Declaration and makes the same request that was

made in the 11/26 Memorandum "that the condition described in the [declaration] be made safe

either by demolition, repair, sealing or by whatever [means necessary] to protect the public

safety." (12/7 Memorandum, attached as Exh. E to Goldberg-Cahn Dec.; *see also* Complaint

¶ 80.)

On December 6, 2007, DePietro presented an Order to Show Cause to New York State

Supreme Court Justice Joseph Maltese, who signed it. (Complaint ¶ 61.) The Order to Show

Cause named the DOB and the City of New York as defendants and stated: "Let the defendants

show cause before this Court on the 21st day of December, 2007 why an order should not be

entered restraining the defendants from demolishing the building located at 527 Page Avenue,

Staten Island, New York until such time as a hearing is held. Service may be made by service

upon the Department of Buildings, Borough Hall, Staten Island, New York personally on

December 6, 2007." (Order to Show Cause, attached as Exh. J to Goldberg-Cahn Dec.)

The Order to Show Cause was then served on the DOB. (Complaint ¶ 62.) Immediately

after service, a New York City Fire Department official called DePietro and told him that he

would be arrested if he attended the demolition. (*Id.* ¶ 63.) DePietro alleges "[u]pon information

and belief" that Ignizio, Mustaciulo, and Tobacco "gleefully notified the media" of the demolition. (*Id.* ¶ 64.)

On December 6, 2007, DePietro's daughter, Kristen DePietro, brought the Order to Show Cause to the Property, but representatives from the Fire Department, the demolition contractor, the Police Department, and the DOB refused to accept it. (*Id.* ¶¶ 82-88.) Ignizio examined the Order to Show Cause, but it was ignored and the demolition was allowed to proceed. (*Id.* ¶¶ 89-90.) The demolition of the buildings on the Property began that day, and DePietro's personal property was destroyed in the process. (*Id.* ¶¶ 91-95.) DePietro alleges that the City did not provide him with notice or an opportunity to be heard before the demolition. (*Id.* ¶¶ 65, 70.) DePietro avers that the City violated the provisions in the New York City Administrative Code that set forth the procedure for repairing or removing unsafe structures by, among other things, not initiating a court proceeding, not obtaining a court precept, and by not posting a survey and a notice at the Property as required. (*Id.* ¶¶ 66-81.) He claims that Council Member Ignizio and Assemblyman Tobacco were part of a conspiracy with City officials to deprive him of notice prior to the demolition. (*Id.* ¶ 51.)

The only notice from the City that DePietro alleges to have received was a certified letter, dated November 27, 2007, which he did not receive until December 10, 2007, after the demolition began. (*Id.* ¶ 96.) The letter reads:

> In response to the November 21, 2007 Declaration of Emergency issued by the Department of Buildings, please be advised that the [HPD's] Division of Demolition will engage a contractor to cure the emergency condition unless you act immediately to correct the condition in accordance with the procedure set forth below.

(Exh. H to Goldberg-Cahn Dec.) The letter further states: "in the event that you choose to cure

the emergency condition, you must contact the [DOB at its borough office] and obtain their approval to commence the emergency cure." (*Id.*) The letter, which was sent to the address of the Property, also warned that "unless HPD is notified by the [DOB] within three business days from the date of this notification, HPD will proceed to cure the emergency condition(s)." (*Id.*) The letter is signed by Paul Reynolds, the HPD's Deputy Director of Demolition, and the "HPD Demolition Unit" is listed as the "Sender" on the certified mail return receipt card. (*Id.*)

As for the condition of the buildings on the Property before the demolition, DePietro alleges that:

> There was no emergency condition or immediate emergency condition or imminent emergency condition on the Property. There were no holes in the roof. There was no fire damage. There was no wall collapse. There was no roof collapse. The garage was in perfect condition. The Florida room was in perfect condition.

(Complaint ¶ 77.) He also claims that "[t]he buildings were adequately locked and safeguarded, and there was a six-foot PVC fence around the Property." (*Id.* ¶ 78.) DePietro states that the reports of Coyle and DeLuca, which formed the basis for the emergency declarations, "did not allege, identify or specify any emergency conditions that threatened life or property, and contained lies, misrepresentations and/or factual errors with respect to the condition of the Property." (*Id.* ¶¶ 79-80.) DePietro further asserts that the demolition was ordered without a consideration of alternative repair work and claims that any conditions on the Property "could easily have been remedied in an effective and efficient manner without resorting to demolition." (*Id.* ¶ 81.) DePietro asserts that Mustaciuolo, Gluckman, Coyle and DeLuca acted in an "abusive, arbitrary and capricious" manner by "categorizing the conditions of the buildings on the Property as Immediate Emergencies." (*Id.*) It is also alleged that the emergency declarations

7

were "deceitful" and that the defendants acted with "intent and malice and/or reckless and callous indifference to the constitutional rights of DePietro." (*Id.* ¶¶ 121, 125.)

On March 5, 2009, DePietro filed his seven count Complaint against the City Defendants and Assemblyman Tobacco. The first count, brought under 42 U.S.C. § 1983, alleges a violation of the Fourteenth Amendment to the United States Constitution. The second count is a 42 U.S.C. § 1985 claim for an alleged conspiracy to interfere with his civil rights. The remaining five counts allege various violations of New York State law, including negligence, trespass, and intentional infliction of emotional distress.

## DISCUSSION

### *Fed. R. Civ. P. 12(b)(6)*

In reviewing a 12(b)(6) motion, "a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein." *Turner v. Olympic Reg'l Dev. Auth.*, 89 F. Supp. 2d 241, 242 (N.D.N.Y. 2000). A district court can only consider the facts stated in the complaint and documents that are either attached to the complaint or incorporated into the complaint by reference. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). If other extraneous materials are "presented to and not excluded by the court," the motion should be treated as a summary judgment motion under Fed. R. Civ. P. 56. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In evaluating a 12(b)(6) motion, a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S.
----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). There is "facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
The Supreme Court has explained that the "plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."
*Id.* (quoting *Twombly*, 550 U.S. at 556).

### 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by
the Constitution and laws of the United States, and must show that the alleged deprivation was
committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988);
*see also Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). "It is well settled in this
Circuit that personal involvement of defendants in alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.
1994) (internal quotation marks omitted). DePietro alleges that the defendants are liable under
§ 1983 for violating his constitutional rights to procedural due process, substantive due process,
and equal protection of the laws.

### The City Defendants' Motion

The City Defendants argue that DePietro has not sufficiently alleged his federal claims
and that qualified immunity shields the individually named officials from liability for their
conduct. The City Defendants ask the Court to decline to exercise supplemental jurisdiction over
DePietro's state claims if the federal claims are dismissed.

9

**A. Procedural Due Process**

In assessing a procedural due process claim, a district court must decide: "(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). "In determining how much process is due, a court must weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest." *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009); *see also O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005).

The parties do not dispute that the demolition of the buildings on the Property deprived DePietro of his property rights. Nevertheless, the City Defendants argue that DePietro's procedural due process claim should be dismissed because: (1) a predeprivation procedure was not required due to the emergency condition of the buildings on the Property; and (2) a sufficient predeprivation procedure was provided by the City. Both of these arguments are without merit.

In order to satisfy the requirements of due process, notice and a predeprivation hearing are ordinarily necessary. However, a predeprivation procedure is not required when there is a genuine emergency that requires urgent action and an adequate postdeprivation remedy is available. *See Catanzaro v. Weiden*, 188 F.3d 56, 61-62 (2d Cir. 1999). The Second Circuit has explained that a public official's decision to invoke an emergency demolition procedure without a predeprivation hearing is afforded "some deference." *Catanzaro*, 188 F.3d at 62. However, the official's discretion is not limitless, and liability will attach when "the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." *Id.* The key inquiry is whether there was "competent evidence allowing the official to reasonably believe

10

that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical." *Id.* at 63.

In *Catanzaro*, a building owned by the plaintiff was badly damaged by a car that crashed into the first floor of the building. 188 F.3d at 58, 63. A municipal official ordered an emergency demolition, the owner sued, alleging a procedural due process violation, and the district court granted the defendants' motion for summary judgment after discovery. The plaintiff appealed, and the Second Circuit affirmed the district court. It held that it was undisputed that the plaintiff's building was "severely damaged by the accident" and that no reasonable trier of fact could determine that the official abused his discretion in invoking the emergency demolition procedure. *Id.* at 63. It found "ample support for a conclusion that [the official] had a reasonable belief that the public was in immediate danger." *Id.*

The Second Circuit recently upheld its holding in *Catanzaro* in a case involving a village's demolition of an upstate hotel. *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46 (2d Cir. 2009). In that case, the Village of Rouses Point, New York demolished the plaintiffs' hotel after it was seriously damaged in a fire:

> The roof and the top floors had been completely destroyed. Debris hung off the hotel's facade, and officials were concerned that it would fall into the street. The instability of the building, as well as its proximity to the street, necessitated the closing of State Road 11.

*Id.* at 48.

The plaintiffs brought suit against the Village and Village officials, and, after discovery, the defendants moved for summary judgment on the plaintiffs' remaining claims, including their procedural due process claim. The district court granted the motion, and the plaintiffs appealed.

11

*Id.* at 48-49. Relying on *Catanzaro*, the Second Circuit affirmed, holding that the plaintiffs "have not produced evidence sufficient to create a genuine dispute concerning whether the defendants abused their discretion in determining that an emergency existed." *Id.* at 52. The Second Circuit pointed to the closure of the roadway and the risk of falling debris in support of its determination. *Id.*

In *Rohde v. City of New York*, No. 99 Civ. 8714, 2000 WL 1372835 (S.D.N.Y. Sept. 25, 2000), the City invoked an emergency procedure to demolish three buildings after a partial facade collapse, and the owner sued, asserting a due process claim. The City and other defendants answered and moved for judgment on the pleadings prior to discovery. *Id.* at *1. The district court granted the motion, holding that the plaintiff's conclusory allegation that there was no imminent danger to the public was insufficient because the partial collapse was undisputed. *Id.* at *4-*5. The district court noted that the plaintiff admitted in the complaint that a joist and wall sections had collapsed at one building, and the plaintiff did not rebut the assertion that eighty percent of one building's front wall and twenty-five percent of another building's front wall had collapsed to the sidewalk. *Id.* at *4. Accordingly, the district court determined that the plaintiff had failed to state a claim upon which relief could be granted and dismissed the case. *Id.* at *5.

In the instant case, the principal issue is whether the emergency demolition procedure was properly invoked. This depends on whether the City had an evidentiary basis to support its emergency finding. There is a factual dispute on this issue that cannot be resolved prior to discovery. The City Defendants contend that the declarations referred to in the Complaint establish *per se* that there was an emergency condition. However, the information in the

12

declarations is vigorously contested by DePietro, who asserts that the declarations did not reflect the true condition of the buildings on the Property prior to the demolition. DePietro also points out that the 11/26 declaration states that the "Property and building have been in this condition for over TEN YEARS," indicating that the condition was not an emergency: "It stands to reason that if there had been no immediate emergency for ten years, there was no immediate emergency on November 26, 2007 . . . ." (DePietro's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 13.)

The City Defendants rely heavily on *Catanzaro* for the proposition that a predeprivation procedure was not necessary because there was an emergency condition that required immediate action. However, that case, like *WWBITV, Inc.*, involved a summary judgment motion, not a motion to dismiss. Moreover, in both of those cases, it was undisputed after discovery that the demolished properties were seriously damaged. In this case, DePietro has not yet had an opportunity to engage in the discovery process and maintains that his buildings were demolished without evidence of an emergency condition. Although in *Rohde*, the district court dismissed the lawsuit before discovery, in that case, it was admitted that wall collapses had occurred, causing severe damage. Here, in contrast, DePietro sharply disputes the City's contentions regarding the condition of the buildings on the Property, precluding a dismissal of his procedural due process claim at this juncture.

The City Defendants' second argument that an adequate predeprivation procedure was provided to DePietro is without merit. The City's November 27, 2007 letter, which was sent to the address of the Property, is inadequate to satisfy the requirements of due process under the standard set forth in *Spinelli v. City of New York*, 579 F.3d 160, 170-75 (2d Cir. 2009). The

13

other undated letters that the City Defendants claim were sent to DePietro were not incorporated into the Complaint by reference, so they cannot be considered on this motion to dismiss.

## B. Equal Protection

The City Defendants argue that DePietro has not sufficiently alleged an equal protection claim because: (1) DePietro's allegations of disparate treatment in comparison to "others similarly situated" are not specific enough; (2) the Supreme Court's holding in *Engquist v. Oregon Department of Agriculture*, --- U.S. ----, 128 S.Ct. 2146 (2008) bars DePietro from challenging the decision to demolish the buildings on the Property on equal protection grounds; and (3) DePietro has not stated a selective enforcement claim because he has not alleged an impermissible motive.

The right to equal protection ensures that all similarly situated people are treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit has] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). The Supreme Court has held that a plaintiff who does not allege membership in a protected class may state a claim for an equal protection violation as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000). In *Olech*, the Court held that to establish such a claim a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.

14

Relying on *Olech*, the Second Circuit has held that, at the pleading stage, a plaintiff need not "identify in her complaint actual instances where others have been treated differently for the purposes of equal protection." *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003). Instead, it is permissible to generally allege that similarly situated people were treated differently. *See Crippen v. Town of Hempstead*, No. 07 Civ. 3478, 2009 WL 803117, at *10 (E.D.N.Y. Mar. 25, 2009); *Mace v. County of Sullivan*, No. 05 Civ. 2786, 2009 WL 413503, at *11 (S.D.N.Y. Feb. 11, 2009); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 244-45 (3d Cir. 2008).

Here, DePietro alleges that the defendants "intentionally treated [him] differently from all others similarly situated and there is no rational basis for the difference in treatment." (Complaint ¶ 127.) He further claims that he "was subjected to intentional, arbitrary and unjustifiable discrimination by [the defendants] in the application, misapplication or non-application of the well-known and established Unsafe Buildings Procedures." (*Id.*) Contrary to the City Defendants' contentions, these allegations are sufficient, "if only barely so," to satisfy the similarly situated requirement at the pleading stage. *Costa v. City of New York*, 546 F. Supp. 2d 117, 118 (S.D.N.Y. 2008).

In *Engquist v. Oregon Department of Agriculture*, --- U.S. ----, 128 S.Ct. 2146 (2008), the Supreme Court addressed the scope of its holding in *Olech* and declined to apply the class of one doctrine in the context of public employment. The Court held that a public employee could not bring a class of one claim to challenge her termination and drew a distinction between cases where there is a "clear standard against which departures, even for a single plaintiff, could be readily assessed" and cases involving "discretionary authority based on subjective, individualized determinations." *Id.* at 2153. The Court reasoned:

There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 2154. Chief Justice Roberts explained the Court's rationale with the aid of an instructive

hypothetical:

Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself-the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id.*

The Court noted that "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* However, the Seventh Circuit, the Eighth

16

Circuit, and the Eleventh Circuit have held that *Engquist* applies outside of the realm of public employment and precludes class of one claims that challenge other types of discretionary decisions. *See Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009) (a police officer's investigative decisions); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (prosecutorial discretion); *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008) (decisions involving government contractors).

District courts in this Circuit have also extended *Engquist* beyond the public employment context, but the Second Circuit has not yet addressed the issue. *See DeFabio v. East Hampton Union Free School Dist.*, 658 F. Supp. 2d 461, 494-95 (E.D.N.Y. 2009); *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 245 (S.D.N.Y. 2008); *Casciani v. Nesbitt*, No. 08 Civ. 6162, 2009 WL 3172684, at \*24-\*26 (W.D.N.Y. Oct. 6, 2009); *Seymour's Boatyard, Inc. v. Town of Huntington*, No. 08 Civ. 3248, 2009 WL 1514610, at \*7-\*8 (E.D.N.Y. June 1, 2009); *Crippen v. Town of Hempstead*, No. 07 Civ. 3478, 2009 WL 803117, at \*4-\*9 (E.D.N.Y. Mar. 25, 2009); *Nasca v. Town of Brookhaven*, No. 05 Civ. 122, 2008 WL 4426906, at \*11 n. 4 (E.D.N.Y. Sept. 25, 2008); *Sloup v. Loeffler*, No. 05 Civ. 1766, 2008 WL 3978208, at \*16-\*17 (E.D.N.Y. Aug. 21, 2008).

A court confronted with a class of one claim outside of the public employment context, assuming that *Engquist* applies outside of that area, should begin by asking whether the plaintiff is challenging a discretionary action. *See Casciani*, 2009 WL 3172684, at \*24-\*26; *Crippen*, 2009 WL 803117, at \*4-\*9; *Sloup*, 2008 WL 3978208, at \*16-\*17. When officials act within their discretion, basing their decision on a variety of factors that could yield different results on a case by case basis, the rationale of *Engquist* precludes a class of one challenge. Permitting the claim "would undermine the very discretion that such state officials are entrusted to exercise."

17

*Engquist*, 128 S.Ct. at 2154. However, an official's discretion is not impaired when a plaintiff's challenge is to an action that exceeded the discretionary authority, making the *Engquist* rationale inapplicable to such a claim. *See Crippen*, 2009 WL 803117, at *4-*9; *Sloup*, 2008 WL 3978208, at *16-*17.

In this case, DePietro's class of one claim is not directed at an action that was within the City's discretion. As stated above, government officials generally do have discretion to invoke an emergency demolition procedure in the interest of public safety, but they do not enjoy *unfettered* discretion in this area. *See WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 50-52 (2d Cir. 2009); *Catanzaro v. Weiden*, 188 F.3d 56, 61-64 (2d Cir. 1999). The Second Circuit has expressly recognized the boundaries of this discretion, which are necessary to protect the rights of property owners. *See WWBITV, Inc.*, 589 F.3d at 52; *Catanzaro*, 188 F.3d at 61-64. DePietro alleges that his buildings were demolished without evidence of an emergency condition and without notice, making the challenged conduct non-discretionary for purposes of the *Engquist* analysis. As the Supreme Court explained:

> What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations-at least not with regard to easement length, however typical such determinations may be as a general zoning matter. Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the State provide a rational basis for it.

*Engquist*, 128 S.Ct. at 2153-54 (citation omitted). The operative question is not whether the

government theoretically had discretionary authority in the area of decisionmaking that is implicated, but whether the *challenged action* was discretionary. *See Hanes v. Zurick*, 578 F.3d 491, 494-96 (7th Cir. 2009); *Alfaro v. Labrador*, No. 06 Civ. 1470, 2009 WL 2525128, at *9 (E.D.N.Y. Aug. 14, 2009). If it was not, then a class of one theory is available. Here, if the City consistently required an evidentiary basis for its expedited demolition procedure, but decided to demolish DePietro's buildings without one, then a clear standard was violated. At this procedural stage in the litigation, taking DePietro's factual allegations as true and drawing all reasonable inferences in his favor, the Court cannot hold that the challenged action was discretionary, so as to warrant the dismissal of DePietro's equal protection claim under *Engquist*.

The City Defendants' argument that the equal protection claim should be dismissed because there are no allegations of an impermissible motive, as required by the Second Circuit's selective enforcement jurisprudence, is also unwarranted. The selective enforcement standard was developed by the Second Circuit before the Supreme Court's holding in *Olech*. A selective enforcement claim requires a showing that: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

The Second Circuit has not addressed the issue of whether the *LeClair* standard remains valid after *Olech*. *See Bizzarro v. Miranda*, 394 F.3d 82, 86-89 (2d Cir. 2005); *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499-500 (2d Cir. 2001); *Giordano v. City of New York*, 274 F.3d 740, 750-51 (2d Cir. 2001); *Balakrishnan v. Kusel*, No. 08 Civ. 1440, 2009 WL

19

1291755, at *6 (E.D.N.Y. May 8, 2009). Courts have chosen to analyze *Olech* and *LeClair* claims separately under the equal protection rubric and have allowed *Olech* claims to proceed even when the *LeClair* standard was not met. *See Assoko v. City of New York*, 539 F. Supp. 2d 728, 735 n.7 (S.D.N.Y. 2008); *Morningside Supermarket Corp. v. N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 340-42 (S.D.N.Y. 2006).

In this case, DePietro's class of one claim could proceed irrespective of any allegations of an impermissible motive. However, in any event, the allegations are sufficient to state an equal protection claim under the *LeClair* standard because DePietro alleges deceitful and malicious conduct and refers to "lies and misrepresentations" in the demolition process. (Complaint ¶¶ 79-80, 121, 124-25.) These assertions, and the more specific factual allegations about the City's actions, are sufficient to plead the impermissible motive prong of the *LeClair* formulation. *See DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003); *Burns v. Cook*, 458 F. Supp. 2d 29, 43 (N.D.N.Y. 2006); *Bullock v. Gerould*, 338 F. Supp. 2d 446, 450-51 (W.D.N.Y. 2004).

**C. Substantive Due Process**

A substantive due process violation exists when a governmental action was "arbitrary, conscience-shocking, or oppressive in a constitutional sense," and not merely "incorrect or ill-advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (internal quotation marks omitted). "As a general matter, the [Supreme Court] has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The City Defendants argue that DePietro's substantive due process claim should be dismissed because the City's conduct was not conscience-shocking.

Although the Court cannot make that determination at this time given DePietro's allegations, his substantive due process claim fails for another reason.

The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Russo v. City of Bridgeport* 479 F.3d 196, 208 (2d Cir. 2007); *Kaluczky*, 57 F.3d at 211. In this case, DePietro's substantive due process claim can only be based on conduct that is covered by an "explicit textual source of constitutional protection." *Graham,* 490 U.S. at 395; *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005); *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000); *Brown v. Baldwin Union Free School Dist.*, 603 F. Supp. 2d 509, 518 (E.D.N.Y. 2009); *Piccoli v. Yonkers Bd. of Educ.*, No. 08 Civ. 8344, 2009 WL 4794130, at *6 n. 5 (S.D.N.Y. Dec. 11, 2009).

"The Fourth Amendment protects individuals 'against unreasonable searches and seizures.'" *Palacios v. Burge*, 589 F.3d 556, 562 (2d Cir. 2009) (quoting U.S. Const. amend. IV). A "seizure" takes place when "'there is some meaningful interference with an individual's possessory interests in'" property. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "Where, as here, the government demolishes a building, a 'seizure' clearly results within the explicit meaning of the Fourth Amendment." *Sula v. City of Watervliet*, No. 06 Civ. 316, 2006 WL 2990489, at *3 (N.D.N.Y. Oct. 19, 2006). Indeed, a claim challenging a government demolition "fits squarely within the contours of the Fourth Amendment's protections." *Id.*; *see also DeBari v. Town of Middleton*, 9

F. Supp. 2d 156, 161 (N.D.N.Y. 1998); *Heidorf v. Town of Northumberland*, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (holding that "there can be no question that the demolition of plaintiff's Church amounted to a seizure within the meaning of the Fourth Amendment"). DePietro's substantive due process claim can only be based on allegations of conduct that is prohibited by the Fourth Amendment. Accordingly, his substantive due process claim must be dismissed.

## D. 42 U.S.C. § 1985

In his opposition to the City Defendants' motion, DePietro voluntarily withdrew this claim, but asks the Court for leave to amend the Complaint to state a cause of action for common law conspiracy. (DePietro's Memorandum of Law in Opposition to Defendants' Motion to Dismiss p. 18). DePietro has not formally moved to amend or submitted a proposed amended complaint. Leave to amend is not required because a party can amend a pleading once as a matter of right "before being served with a responsive pleading." Fed. R. Civ. P. 15(a).[3] A motion to dismiss is not a "'responsive pleading' within the meaning of Rule 15(a)." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 242 (2d Cir. 2007). Accordingly, DePietro has the right to file an amended complaint against the defendants that moved to dismiss without leave of Court.

## E. Qualified Immunity

Government officials are protected from civil liability under the doctrine of qualified immunity when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

---

[3] An amendment to this rule took effect during the pendency of the motions before the Court, but the amendment does not apply here.

818 (1982). On a motion to dismiss, "[t]he initial question with respect to qualified immunity is whether, viewing the facts alleged in the light most favorable to the plaintiff, there was a constitutional violation." *Fierro v. City of New York*, 341 Fed. Appx. 696, 698 (2d Cir. 2009) (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006)). "If the answer to that question is yes, then the Court must determine if that right was clearly established at the time the challenged decision was made, and whether the defendants' actions were objectively unreasonable." *Id.* (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003)).

Here, assuming DePietro's factual allegations to be true and drawing all reasonable inferences in his favor, the City Defendants have not shown that dismissal is warranted under the doctrine of qualified immunity. DePietro has adequately alleged that his procedural due process and equal protection rights were violated, and that those rights were clearly established at the time of the decision to demolish the Property through an emergency procedure. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 563-65 (2000); *Catanzaro v. Weiden*, 188 F.3d 56, 61-65 (2d Cir. 1999). Finally, DePietro has also alleged that the challenged conduct was not objectively reasonable.

### *Assemblyman Tobacco's Motion*

In his motion to dismiss, Assemblyman Tobacco argues that the claims brought under 42 U.S.C. § 1983 should be dismissed as against him because: (1) he is not a "person" within the meaning of § 1983; and (2) DePietro has not sufficiently alleged his personal involvement in the alleged constitutional deprivations. Tobacco asserts that the state claims against him should be dismissed: (1) under the Eleventh Amendment; (2) because he had qualified immunity; and (3)

23

for DePietro's failure to plausibly allege that Tobacco can be liable under these causes of action. In response, DePietro asserts that he sued Tobacco in his personal capacity, making him a "person" within § 1983, and rendering the Eleventh Amendment inapplicable. He contends that the allegations are sufficient to state a claim against Tobacco and that he is not entitled to assert qualified immunity as a defense.

The Complaint does not clearly indicate the capacity in which Tobacco is sued. Tobacco correctly argues that, if he was sued only in his official capacity, all of the claims asserted against him would be dismissed. The § 1983 claims against him would be without merit because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The remainder of the claims would be barred by the Eleventh Amendment. A suit against "state officials in their official capacities is the functional equivalent of a claim for damages directly from the State of New York, and Eleventh Amendment sovereign immunity therefore ordinarily protects a defendant in his or her official capacity to the same extent that it protects the State." *Lane v. Carpinello*, No. 07 Civ. 751, 2009 WL 3074344, at *13 (N.D.N.Y. Sept. 24, 2009).

However, on a motion to dismiss, where the capacity in which officials were sued is unclear, a court should "allow the case to proceed against the officials in their individual capacities, requiring, if appropriate, an amendment to provide greater notice to the defendants." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993). "In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both" and "'[t]he course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (quoting

*Brandon v. Holt*, 469 U.S. 464, 469 (1985)). As such, for purposes of this motion, the Court will assume that Assemblyman Tobacco was sued in his personal capacity.

The due process and equal protection claims asserted against Tobacco in his personal capacity must be dismissed because DePietro has not alleged facts sufficient to show that Tobacco was personally involved with the alleged constitutional deprivations. Tobacco's alleged notification of the media and presence at the scene of the demolition is insufficient. Tobacco had no authority to invoke the emergency demolition procedure or to order or carry out the demolition. *See Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005). At most, he lobbied for it, but this cannot make him liable for the ultimate decisions of City officials.

The third count of the Complaint, which alleges a violation of the due process clause of the New York State Constitution, the fifth count for intentional infliction of emotional distress, the sixth count for failure to protect, and the seventh count for negligence should also be dismissed as against Tobacco because these claims are not plausibly asserted against him. But the fourth count of the Complaint will not be dismissed against Tobacco because DePietro alleges that Tobacco physically trespassed on the Property, and Tobacco's attorney has not advanced a specific argument for the dismissal of this claim. (*See* Complaint ¶ 91.) With respect to Tobacco's qualified immunity argument, he relies solely on the federal qualified immunity doctrine. However, he has not shown that his alleged trespass is covered by qualified immunity and has not even addressed qualified immunity under New York State law.

## CONCLUSION

The City Defendants' motion to dismiss is granted to the extent that: (1) DePietro's substantive due process claim in the first count of the Complaint is dismissed; and (2) the Complaint is dismissed as against the New York City Department of Buildings, the New York City Department of Housing Preservation and Development, the New York City Police Department, the New York City Department of Transportation, the New York City Department of Sanitation, the New York City Department of Education, the New York City Department of Environmental Protection, the New York City Department of City Planning, the New York City Department of Design and Construction, the New York City Department of Health and Mental Hygiene, the New York City Department of Parks and Recreation, and the New York City Environmental Control Board. The City Defendants' motion is denied in all other respects.

Assemblyman Tobacco's motion is granted to the extent that the first count, the third count, the fifth count, the sixth count, and the seventh count are dismissed as against him, and the fourth count shall remain. The second count is deemed withdrawn as against all of the defendants.

**SO ORDERED.**

s/Hon. Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated:      January 29 , 2010
            Brooklyn, New York

26